# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **DIMOND RIGGING CO., LLC** | ) | **CASE NO.1:17CV2054** |
| | ) | |
| Plaintiff, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **BDP INTERNATIONAL, INC, ET AL.** | ) | **OPINION AND ORDER** |
| | ) | |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Motions to Dismiss by Defendants BDP International, Inc. ("BDP") and Logitrans International, Inc. ("Logitrans") (ECF DKT # 9, 21). For the following reasons, the Court grants Defendants' Motions and dismisses the above-captioned case.

According to Plaintiff Dimond Rigging Co., LLC ("Dimond"), Defendants BDP and Logitrans performed international shipping on behalf of Dimond without having proper licenses and qualifications, resulting in increased shipping delays and expenses. Plaintiff's Complaint alleges Breach of Fiduciary Duty: Agent/Principal, Fraudulent Non-Disclosure, Intentional Fraud, Breach of Agreement: Failure to Perform and Illegality of Contract and Unjust Enrichment.

## Background Facts

Plaintiff Dimond's claims concern the shipment of several tons of used manufacturing equipment consisting of 132 individual pieces (the "Equipment") from the port of Cleveland, Ohio to the port of Xingang, China (the "Shipment"). Compl. ¶ 36. Dimond was inexperienced in international shipment, especially considering the size and weight of the Equipment. Compl. ¶ 10. Dimond alleges that, while the project was in initial stages during "late spring/early summer of 2011," Dimond received an unsolicited call from BDP, who offered to "assume and perform... each and every aspect of the shipment." Compl. ¶¶ 9, 12-15. Dimond hired BDP to perform the Shipment. Compl. ¶ 24. Plaintiff contends that BDP failed to disclose that it was not a properly licensed Ocean Transportation Intermediary ("OTI") and that it was illegal for BDP and Logitrans to perform the Shipment since neither BDP nor Logitrans was a licensed OTI or Non Vessel Operating Common Carrier ("NVOCC"). Compl. ¶¶ 18, 44.

Shortly thereafter, BDP informed Dimond that they had obtained a ship on Dimond's behalf and sent a "con line booking note" to Dimond to execute, even though the Equipment had not been fully disassembled and weighed. Compl. ¶ 25. Dimond created what they believed was "*a preliminary and estimated* packing list" (emphasis original). Compl. ¶ 26. BDP allegedly provided this preliminary list, which underestimated the weight of the Equipment and misstated how many pieces the Equipment was when obtaining quotes from third-party contractors, including stevedores who would load the Equipment onto the ship. Compl. ¶¶ 27, 29, 33.

The next month BDP informed Dimond that the initial ship had fallen through and that

Logitrans, which BDP allegedly misrepresented as a licensed NVOCC, would be the replacement. Compl. ¶ 30. Dimond alleges that BDP and Logitrans were actually scrambling to find a replacement ship at this late stage and finally selected the *Gisele Scan*, operated by Scan-Trans, Inc. ("Scan-Trans"), without disclosing to Dimond that they had contracted with Scan-Trans. Compl. ¶¶ 31, 39. According to Dimond, the *Gisele Scan* was not equipped to handle the Shipment's volume and BDP and Logitrans failed to exercise due diligence in choosing the *Gisele Scan* for the job. Compl. ¶ 32. On November 17, 2011, Dimond paid BDP $898,000 for the Shipment. Compl. ¶ 104. BDP acknowledged its receipt of this payment on December 9, 2011. Compl. ¶ 105.

In connection with hiring the *Gisele Scan*, BDP prepared a new Bill of Lading, which "errantly identified only 75 pieces of Equipment and only 3,100 revenue tons." Compl. ¶ 33. This Bill of Lading identified Dimond as the merchant, Logitrans as the carrier, Scan-Trans as the agent/shipbroker and BDP as the merchant's representative. The Bill of Lading contained terms and conditions, including the following:

> U.S. Trade. Period of Responsibility.
>
> (a) In case the Contract evidenced by this Bill of Lading is subject to the Carriage of Goods by Sea Act of the United States of America, 1936 (U.S. COGSA), then the provisions stated in said Act shall govern before loading and after discharge and throughout the entire time the cargo is in the Carrier's custody and in which event freight shall be payable on the cargo coming into the Carrier's custody.

The Bill of Lading also contained the following provision, which the parties refer to as the "Himalaya Clause":

> (a) It is hereby expressly agreed that no servant or agent of the

> Carrier (which for the purpose of this Clause includes every independent contractor from time to time employed by the Carrier) shall in any circumstances whatsoever be under any liability whatsoever to the Merchant under this Contact of carriage for any loss, damage or delay of whatsoever kind arising or resulting directly or indirectly from any act, negligent or default on his part while acting in the course of or in connection with his employment.
>
> (b) Without prejudice to the generality of the foregoing provision of this Clause, every exemption from liability, limitation, condition and liberty herein contained and every right, defense and then and immunity of whatsoever nature applicable to the Carrier or to which the Carrier is entitled, shall also be available and shall extend to protect every such servant and agent of the Carrier acting as aforesaid.

Prior to shipping, Dimond signed a booking note ("Booking Note") which also contained a copy of the terms and conditions that would be present in the Bill of Lading.

Furthermore, Dimond alleges that it was not informed of the date of a pre-shipment meeting and that BDP and Logitrans failed to appear on their behalf. Compl. ¶¶ 107-108. This resulted in delays and increased costs which were passed on to Dimond, since the *Gisele Scan* was unable to accommodate the Equipment when the ship arrived at the dock and the stevedores refused to load all of the Equipment since it had not been included in their price quote. Compl. ¶¶ 50-56. The *Gisele Scan* eventually left for China, leaving behind 35 pieces of Equipment. Compl. ¶ 55.

As a result of the botched Shipment, Dimond was involved in five lawsuits with various parties, including its Chinese customer and the stevedores (collectively, the "Other Litigation"). On July 11, 2013, Dimond filed a Complaint against BDP alleging Breach of Fiduciary Duty, Unjust Enrichment and Fraud. While Logitrans was not a defendant in this

2013 action, Logitrans was named in the action. Dimond's 2013 Complaint was dismissed without prejudice for Dimond's failure to perfect service of process on BDP. On August 9, 2017, Dimond filed a Motion to Amend and Praecipe for Issuance of Amended Summons in the 2013 action, which the court denied. On October 2, 2017, Dimond filed its current Complaint against BDP and Logitrans.

Plaintiff's Complaint alleges Breach of Fiduciary Duty: Agent/Principal for the alleged misrepresentations and negligence of BDP and Logitrans in completing the Shipment, Fraudulent Non-Disclosure for BDP and Logitrans' failure to disclose that they were not properly licensed OTIs or NVOCCs, Intentional Fraud for the failure to disclose their non-licensure, Breach of Agreement: Failure to Perform and Illegality of Contract for BDP and Logitrans' failure to appear at the pre-shipment meeting and for forming an illegal contract in light of BDP and Logitrans' non-licensure, and Unjust Enrichment for BDP and Logitrans retaining Dimond's $898,000 shipping payment when the Shipment was not fully performed.

**<u>Defendants' Motions</u>**

Defendants argue that the Carriage of Goods by Sea Act ("COGSA") governs the Shipment. Defendants urge the Court to consider the Other Litigation, especially *Federal Marine Terminals, Inc. v. Dimond Rigging Co., LLC*, No. 1:13 CV 01329, 2014 WL 4809427 (N.D. Ohio September 26, 2014), in which this Court found that COGSA governed the Shipment and that the "Himalaya clause" in the Bill of Lading extended COGSA, including its one-year statute of limitations, to independent contractors. Since the Court in *Federal Marine Terminals* calculated that the statute of limitations began to run on May 17, 2012 (the day the goods were delivered, or should have been delivered), the Court held that Dimond's

claims, filed in July 2013, were time-barred. Defendants urge this Court to hold in line with the *Federal Marine Terminals* case that all of Dimond's Claims are time-barred under COGSA.

Even if the Court applies state law instead of COGSA, Defendants argue that the result is the same; all of Dimond's Claims are barred by applicable statutes of limitations. Defendants contend that the Ohio statutes of limitations for breach of fiduciary duty and fraud are four years. With regard to Dimond's Claim for Breach of Fiduciary Duty, Defendants contend that the statute of limitations began to run on December 9, 2011 and the Claim should have been brought by December 9, 2015. As for Dimond's Fraud Claims, Defendants contend that the statute of limitations began to run in October 2011 and the Claims should have been brought by October 2015. Therefore, since the current Complaint was filed on October 2, 2017, Defendants argue that Dimond's Breach of Fiduciary Duty, Fraudulent Non-Disclosure and Intentional Fraud Claims are all time-barred.

Defendants argue that Dimond's Contractual Claims are governed by Pennsylvania law because the Bill of Lading states that "[d]isputes arising out of or in connection with this Bill of Lading shall be exclusively determined by the courts and in accordance with the law of the place where the Carrier has his principal place of business." Logitrans, who is listed as the carrier on the Booking Note, has its principal place of business in Pennsylvania. The statute of limitations for Dimond's Breach of Contract Claim began to run in 2012 and the Claim should have been brought no later than 2016. Furthermore, Defendants maintain that the statute of limitations for Dimond's Unjust Enrichment Claim began to run when Dimond allegedly made payment to BDP for the Shipment on November 17, 2011, or when BDP

6

acknowledged receipt of the payment on December 9, 2011 and that the Claim should have been brought no later than December 9, 2015.  Therefore, because the Complaint was filed on October 2, 2017, Defendants contend that Dimond's Breach of Contract and Unjust Enrichment Claims are also time-barred.

Defendants also argue that the Complaint should be dismissed because Dimond's Claims are precluded by collateral estoppel and res judicata.  Defendants maintain that Dimond's Complaint represents an impermissible attempt to re-litigate issues that were already (or should have been) litigated in the Other Litigation.  Furthermore, several issues raised by Dimond in its Complaint have already been decided against Dimond in the Other Litigation.  Therefore, Defendants argue that the Court should grant Defendants' Motions and dismiss this case.

**Plaintiff's Response**

Dimond first argues that without additional discovery, it is impossible to resolve choice of law issues.  Dimond next argues that neither it nor BDP was a party to the Bill of Lading and thus, COGSA should not apply.  Finally, Dimond argues that this is a "mixed contract," not solely a contract to transport goods by sea, so this case does not fall under admiralty jurisdiction, but rather under diversity jurisdiction.  Therefore, Dimond argues that Ohio law should apply in place of COGSA.

Under Ohio law, Dimond contends that the statutes of limitations are as follows: "[b]reach of oral/written agreements are 6 and 15 years; business torts such as negligence and fraud are 4 years; unjust enrichment (quasi contract) 6 years; and breach of fiduciary duties 4 years."  Dimond also argues that tolling and the discovery rule also apply to this case and

7

thus, none of its claims are time-barred.

Dimond next argues that even if COGSA applies, the Court should not allow BDP and Logitrans to take advantage of its one-year statute of limitations under the doctrine of equitable estoppel. Dimond contends that BDP and Logitrans were not licensed OCIs nor NVOCCs and that they failed to follow COGSA by nonetheless contracting to carry out the Shipment. Therefore, Defendants should not be allowed to benefit from the parts of the law which are advantageous to them when they failed to follow COGSA's licensure provisions.

Finally, Dimond argues that neither issue preclusion nor claim preclusion applies to this case because BDP and Logitrans have failed to identify the precise claims or issues they believe are being re-litigated here and thus their Motion should be denied.

## LAW AND ANALYSIS

### Standard of Review

"In reviewing a motion to dismiss, we construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Factual allegations contained in a complaint must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). *Twombly* does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Dismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990). The United States Supreme Court, in *Ashcroft v. Iqbal*, 566 U.S. 662 (2009), discussed *Twombly* and provided additional analysis of the motion to dismiss standard:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusion, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-plead factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 1950.

When a court is presented with a Rule 12(b)(6) motion, it may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein. *See Amini v. Oberlin Coll.*, 259 F.3D 493, 502 (6th Cir. 2001).

**Are Dimond's Claims barred by COGSA?**

Bills of Lading are maritime contracts, governed by federal maritime law. *See Stainless Sales, Inc. v. Evergreen America Corp.*, No. 03-CV-70133-DT, 2006 WL 1328845 at *2 (E.D.Mich. May 15, 20016). COGSA provides that "[e]very bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade, shall have effect subject to [COGSA]." 46 U.S.C. § 30701 (2012). COGSA also contains a one-year statute of limitations for all cargo claims, which begins to run "after delivery of the goods or the date when the goods should have been delivered." 46 U.S.C. § 30701 (2012). In the *Federal Marine Terminals* case, the court held that "[t]he COGSA time-bar provision applies to claims sounding in contract and tort." 2014 WL 4809427 at *6, fn. 1, citing *Intel. Container Corp. v. M/V TITAN SCAN*, No. 494-55, 1996 WL 906347, **5-6 (S.D.Ga. Oct. 24, 1996).

Dimond argues that its Claims are not governed by maritime law because its contract with BDP and Logitrans was a "mixed contract" for transportation of goods both by sea and over land. However, it appears from Dimond's exhibits that Dimond arranged separately to transport the Equipment from its plant to the port of Cleveland and that transportation from the port of Xingang, China to the customer would be the customer's responsibility. Furthermore, the only contract to which Dimond, BDP and Logitrans are all parties is the Bill of Lading.[1] Therefore, Dimond's argument that COGSA does not apply fails under the clear language of the Bill of Lading, which states that COGSA applies "before loading and after discharge and throughout the entire time the cargo is in the Carrier's custody."

Furthermore, in the *Federal Marine Terminals* case, the court found that the terms and conditions from the Bill of Lading applied even before its execution:

> The weight of available authority holds that when alleged wrongdoing or negligence with respect to goods intended for shipping occurs prior to loading and the issuance of a bill of lading... the carrier's standard bill of lading will govern when the parties, through prior course of dealing or practice, reasonably expected that the carriage would be subject to the carrier's bill.

2014 WL 4809427 at *4. *See also Stainless Sales*, 2006 WL 1328845 at *2 ("[F]ederal maritime law has long held that shippers are bound by the terms of an un-issued Bill of Lading when they intended one to issue in the ordinary course."). In *Federal Marine Terminals*, the Court also held that Dimond reasonably should have anticipated the Bill of Lading's terms to apply. *See* 2014 WL 4809427 at *4. The Court holds in line with the *Federal Marine Terminals* case that the Bill of Lading's terms and conditions apply because

---

[1] Dimond argues that it and BDP were not parties to the Bill of Lading. However, this is clearly false on the face of the Bill of Lading, which lists both Dimond and BDP as parties.

Dimond had notice of these terms when it signed a booking note which contained a copy of the Bill of Lading terms and conditions prior to the execution of the Bill of Lading.

Dimond also argues that more discovery is needed to clarify the roles that BDP, Logitrans, Scan-Trans and Dimond itself were to fill in the Bill of Lading. However, these roles are clear on the face of the Bill of Lading. Furthermore, the Bill of Lading contains a Himalaya clause, which extends COGSA to "every independent contractor from time to time employed by the carrier." The Court in the *Federal Marine Terminals* case applied this clause broadly to include even contractors who were not listed on the Bill of Lading. *See* 2014 WL 4809427 at *3. Therefore, regardless of their specific roles in the transaction, Logitrans and BDP are subject to COGSA and Dimond's Claims against both Defendants fall under COGSA's one-year statute of limitations.

While it is unclear from the face of Dimond's Complaint when each claim arose, Dimond does not allege any date later than December 9, 2011. In the *Federal Marine Terminals* case, this Court found that the Equipment arrived in China on March 21, 2012 and was released to Dimond's Chinese customer on May 17, 2012. 2014 WL 4809427 at *2. COGSA provides that, "the carrier... shall be discharged from all liability... unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered." 46 U.S.C. § 30701. In the *Federal Marine Terminals* case, the court held that "[t]he COGSA time-bar provision applies to claims sounding in contract and tort." 2014 WL 4809427 at *6, fn. 1, citing *Intel. Container Corp. v. M/V TITAN SCAN*, No. 494-55, 1996 WL 906347, **5-6 (S.D.Ga. Oct. 24, 1996). Therefore, even in the light most favorable to Dimond, all of its Claims against BDP and Logitrans should have been filed no later than

11

May 17, 2013. Because Dimond's Complaint was filed on October 2, 2017, the Court grants Defendants' Motions and dismisses this case.

Lastly, Dimond argues that equitable estoppel should bar BDP and Logitrans from taking advantage of COGSA's one-year statute of limitations. Dimond contends that BDP and Logitrans did not comply with COGSA's licensure provisions because they contracted to perform the Shipment even though neither Defendant is an OTI or NVOCC. However, COGSA does not include licensure provisions. Therefore, Dimond has not sufficiently alleged that BDP and Logitrans did not follow COGSA. There is no basis to apply equitable estoppel to this case. Since all of Dimond's Claims arise out of the Shipment and the Bill of Lading, Dimond's Claims are barred by COGSA's one-year statute of limitations.

Therefore, for the foregoing reasons, the Court grants Defendants BDP International, Inc. and Logitrans International, Inc.'s Motion to Dismiss.

IT IS SO ORDERED.

            s/ Christopher A. Boyko
            CHRISTOPHER A. BOYKO
            United States District Judge

Dated: June 22, 2018